IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

MONROEVILLE CHRYSLER, LLC,           )
             Plaintiff,           )
                      )
            vs           )     Civil Action 06-657
                      )
DAIMLERCHRYSLER MOTORS           )
COMPANY LLC; DAIMLERCHRYSLER           )
CORPORATION; and JOHN DOES 1-10,           )
             Defendants.           )

REPORT AND RECOMMENDATION

I. Recommendation:

It is respectfully recommended that the defendants' motion to dismiss the amended complaint (Document No. 34) be granted as to Counts II, III, IV, VII and VIII and denied in all other respects.

II. Report:

The plaintiff, Monroeville Chrysler, LLC, has filed an eight-count amended complaint against defendants DaimlerChrysler Motors Company, LLC, DaimlerChrysler Corporation (collectively, "DaimlerChrysler"), and John Does 1-10 (described by the plaintiff as unidentified persons or entities who may have participated in defendants' complained-of acts). The defendants have moved dismiss the amended complaint for failure to state a cognizable claim. For reasons discussed below, the defendants' motion to dismiss should be granted in part and denied in part.[1]

_____

1.   On May 18, 2006, the plaintiff filed its original complaint against DaimlerChrysler Motors

(continued...)

As gleaned from the amended complaint, DaimlerChrysler is engaged in the

business of manufacturing and assembling motor vehicles and parts for several passenger car

lines, including Chrysler and Jeep.  Since 1987, the plaintiff has been an authorized dealer or

franchisee of DaimlerChrysler, selling and servicing new Chrysler and Jeep vehicles.  Effective

January 30, 2002, the plaintiff and DaimlerChrysler entered into series of agreements relating to

a Chrysler dealership franchise.  Effective February 20, 2003, the parties entered into a series of

agreements pertaining to a Jeep dealership franchise.  The aforesaid agreements encompass

"sales and service agreements", "direct dealer agreements", and "software, license, data exchange

and electronic commerce agreements" (collectively referred to as the "franchise agreements").[2]

The plaintiff avers that pursuant to the franchise agreements, it is required to use

its best efforts to promote and sell Chrysler and Jeep vehicles within its sales locality and meet

certain minimum sales requirements; that correspondingly, DaimlerChrysler is obligated to

---

1.   (...continued)

Company, LLC ("DCMC") for alleged violations of the Automobile Dealer's Day In Court Act, 15 U.S.C. § 1221, et seq., the Pennsylvania Board of Vehicles Act, 63 P.S. § 818, et seq., and for breach of contract and the implied duty of good faith and fair dealing.  On August 24, 2006, DCMC moved for judgment on the pleadings on the original complaint.  On August 29, 2006, the plaintiff amended its complaint, adding as defendants DaimlerChrysler Corporation and John Does 1-10, and increasing its claims to include counts for declaratory judgment, mandatory mediation, tortious interference with prospective contractual and business relations and negligence causing economic loss.  On September 8, 2006, DaimlerChrysler moved to dismiss the amended complaint, after which the plaintiff filed a motion to compel mandatory mediation pursuant to 63 P.S. § 818.11. On September 28, 2006, the Court granted the plaintiff's motion to compel mandatory mediation and to stay the case, and it denied DaimlerChrysler's motion to dismiss without prejudice.  On June 1, 2007, after the parties were unable to resolve the case in mediation, the plaintiff moved to lift the stay.  On June 4, 2007, the Court granted the motion to lift the stay.  On June 8, 2007, the defendants renewed their current motion to dismiss the amended complaint.

2.   Copies of the parties' franchise agreements are attached to the amended complaint as Exhibits A and B.

promote the plaintiff's sales of its products by advertising to the public in the most effective manner and making available to it certain confidential information concerning sales and service programs; that if the plaintiff sells sufficient vehicles to meet a volume performance allowance established by DaimlerChrysler, it is entitled to receive incentive payments; that DaimlerChrysler established other incentive programs for its dealers, such as the "Five Star Dealership" certification program, whereby it promised to reward its "Five Star" dealers with higher profits, a more competitive position in the marketplace and Internet web-based resources; and that DaimlerChrysler certified the plaintiff as a "Five Star" dealer.

According to the plaintiff, DaimlerChrysler established a sales and marketing program on its Internet website purportedly for the benefit of its dealers known as "Find a Dealer". The plaintiff contends that the "Find a Dealer" program allows persons using the Internet to have access to dealerships and their inventory by entering their zip codes; that in contravention of the franchise agreements and its certification as a "Five Star Dealership", the "Find a Dealer" program directs potential customers to dealers other than the plaintiff located within or near its sales locality; that after learning that the website directed users to another dealer, the plaintiff contacted DaimlerChrysler and apprised them of the situation to no avail; and that DaimlerChrysler's misdirection of customer inquiries, and its failure to give the plaintiff website priority in or around its sales locality has harmed its sales, profitability and position in the marketplace.

In its amended complaint, the plaintiff seeks a declaratory judgment that DaimlerChrysler breached the franchise agreements and violated the Automobile Dealer's Day In Court Act ("ADDCA"), 15 U.S.C. §§ 1221-1226, the Pennsylvania Board of Vehicles Act

3

("PBVA"), 63 P.S. § 818.1 *et seq*., and state common law (Count I).  The plaintiff also asserts claims against the defendants for violating the ADDCA (Count II) and the PBVA (Count III), for breaching the franchise agreements (Count V) and the implied covenant of good faith and fair dealing (Count VI), for tortiously interfering with its prospective business relations (Count VII), and for negligence causing economic loss (Count VIII).[3]  The Court's federal question and diversity jurisdiction are invoked.[4]

The defendants have moved to dismiss the amended complaint pursuant to F.R.Civ.P. 12(b)(6).  They argue that plaintiff's underlying causes of action in Counts II-VIII fail to state a claim upon which relief can be granted, and accordingly, its claim for a declaratory judgment in Count I must fail.

In reviewing a motion to dismiss, all well-pleaded allegations of the complaint must be accepted as true and viewed in a light most favorable to the non-movant.  Estelle v. Gamble, 429 U.S. 97 (1976).  To survive a motion to dismiss, a complainant's "[f]actual allegations must be enough to raise a right to relief above the speculative level."  Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1965 (2007).  A complaint will be dismissed if it does not plead "enough facts to state a claim to relief that is plausible on its face."  Id. at 1974.

In Count II of the amended complaint, the defendants are said to have violated the ADDCA.  The ADDCA was enacted "to redress the economic imbalance and unequal bargaining

---

3.    In Count Four, the plaintiff sought "mandatory mediation pursuant to [the PBVA]".  This claim is moot, for as mentioned above, the Court stayed this action while the parties engaged in mediation.

4.    The plaintiff asserts it is a citizen of Pennsylvania, while DaimlerChrysler is formed under the laws of Delaware, with principal places of business in Auburn Hills, Michigan.

power between large automobile manufacturers and local dealerships" and to protect automobile dealers from "retaliatory and coercive practices."  <u>Northview Motors, Inc. v. Chrysler Motors Corp.</u>, 227 F.3d 78, 92 (3d Cir. 2000).   To state a cognizable claim under the ADDCA, a plaintiff must allege that (1) it is an automobile dealer; (2) the defendant is an automobile manufacturer; (3) a manufacturer-dealer relationship exists and is embodied in a written franchise agreement; and (4) it has been injured by the defendant's failure to act "in good faith in performing or complying with any of the terms or provisions of the franchise". 15 U.S.C. § 1222; also see, <u>Northview Motors</u>, <u>supra</u>, 227 F.3d at 92.

The defendants do not dispute that the plaintiff has established the first three elements of an ADDCA claim; however, they argue that the amended complaint fails to sufficiently plead the fourth element, i.e., DaimlerChrysler's failure to act in good faith.  The ADDCA defines the term "good faith" as the "duty of each party to any franchise . . .  to act in a fair and equitable manner toward each other so as to guarantee the one party freedom from coercion, intimidation, or threats of coercion or intimidation from the other party." 15 U.S.C. § 1221(e).  Based on the plain language of the statute, as well as the case law constructing it, "the duty of 'good faith' dealing imposed by the Act must be given a narrow, rather than expansive construction."  <u>GMC v. New A.C. Chevrolet</u>, 263 F.3d 296, 325-26 (3d Cir. 2001), quoting <u>Northview Motors</u>, 227 F.3d at 93.  Thus, the Third Circuit Court of Appeals holds that "coercion or intimidation is a necessary element of a cause of action under the ADDCA."  <u>New A.C. Chevrolet</u>, <u>supra</u>, 263 F.3d at 326.

Indeed, the ADDCA "does not protect dealers against all unfair practices, but only against those breaches of good faith evidenced by acts of coercion and intimidation."  <u>Northview</u>

Motors, 227 F.3d at 93.  "An automobile dealer cannot establish lack of good faith merely by demonstrating that the manufacturer acted arbitrarily, unreasonably, or in a generally unfair manner; rather, the dealer must establish that the manufacturer's conduct constituted 'coercion, intimidation, or threats of coercion and intimidation' directed at the dealer."  New A.C. Chevrolet, supra, 263 F.3d at 325, quoting 15 U.S.C. § 1221(e).  The Court has explained that "[t]he type of coercion or intimidation rendered actionable by the ADDCA occurs only when the automobile manufacturer makes a 'wrongful demand which will result in sanctions if not complied with.'"  New A.C. Chevrolet, 263 F.3d at 326, quoting Buono Sales, Inc. v. Chysler Motors Corp., 449 F.2d 715, 724 (3d Cir. 1971).

Here, the defendants are said to have violated the ADDCA in these ways, by: (a) "failing to honor their own written policies on sales standards" (b) "deciding not to comply with the terms and provisions of the franchise agreements entered into between the parties" (c) "acting in a coercive or intimidating manner by contacting Plaintiff's customers and informing them to conduct their transactions with another dealer" and (d) "advertising another dealer in a position more favorable on Defendants' 'Find a Dealer' website [which] ris[es] to the level of unilateral and coercive actions toward Plaintiff."  Amended Complaint at ¶ 73(a)-(d).

We agree with the defendants that the plaintiff's ADDCA claim is deficient. The plaintiff first complains that the defendants failed to act in good faith by not "honor[ing] their own written policies on sales standards," and "deciding not to comply with the terms and provisions of the franchise agreements entered into between the parties"  Id. at ¶ 73(a)-(b). Clearly, such allegations do not involve intimidation or coercion and are essentially breach of contract claims.  Thus, they do not implicate the ADDCA.

The plaintiff also contends that defendants "act[ed] in a coercive or intimidating manner" by contacting the Plaintiff's customers with advertisements and incentives to visit another dealer, and by placing another dealer in a more favorable position on the Defendant's "Find a Dealer" website.  Id. at ¶ 73(c)-(d).  Although these claims refer to the defendants' alleged acts as "intimidating" and "coercive", they are not actionable under the ADDCA.  As discussed above, the "type of coercion or intimidation rendered actionable by the ADDCA occurs only when the automobile manufacturer makes a 'wrongful demand which will result in sanctions if not complied with.'"  New A.C. Chevrolet, 263 F.3d at 326, quoting Buono Sales, 449 F.2d at 724.  Here, the plaintiff does not allege that the defendants made a demand upon it, let alone a wrongful demand.  Further, the plaintiff does not complain that the defendants threatened it with sanctions of any kind.

In hopes of salvaging its deficient ADDCA claim, the plaintiff argues that the defendants' "scheme of misdirecting [its] customers... is a pervasive threat to the life of [its] franchise", and that defendants "act[ed] in a coercive and intimidating manner in refusing to provide responses to [its] inquiries [as to the operation of its Internet website]."[5]  Certainly, "a manufacturer's efforts to drive a dealer out of business can qualify as bad faith" under the Act. Northview Motors, 227 F.3d at 93.  However, the plaintiff has not pled sufficient facts to show that the defendants made a wrongful demand upon it which would result in sanctions if not complied with, or engaged in coercion or intimidation in seeking to harm its business.  Absent such allegations, Count II fails to state a cognizable claim.

In Count III, the plaintiff complains that the defendants violated the PBVA by

---

5.   See, plaintiff's brief opposing the motion to dismiss (Document No. 36) at pp. 4-5.

engaging in a "de facto modification of [its] franchise without 60-day advance notice" as required

by 63 P.S. § 818.12(b)(10).  Amended Complaint at ¶ 81.  In pertinent part, 63 P.S. § 818.12(b)(10)

provides that it shall be a violation of the PBVA for any manufacturer to:

> Modify a franchise during the term of the franchise or upon its
> renewal if the modification substantially and adversely affects
> the new vehicle dealer's rights, obligations, investment or return
> on investment without giving 60 days' written notice of the
> proposed modification to the new vehicle dealer unless the
> modification is required by law, court order or the board.

In moving to dismiss this claim, the defendants argue that the plaintiff has

failed to plead a modification to the franchise agreements which they allegedly made.  We agree.

In Count III, the plaintiff merely contends that the defendants' conduct "constituted

a de facto modification of [its] Chrysler's franchise without 60-day advance written notice".

Amended Complaint at ¶ 81.  In opposing the defendants' motion to dismiss, the plaintiff clarifies

its purported claim, stating that DaimlerChrysler "unilaterally transgressed" the parties' franchise

agreement by means of its "Find a Dealer" website, and its "diversion of [plaintiff's] customer base

contradicted its contractual obligations".[6]

In essence, the plaintiff's claim in Count III is tantamount to a breach of contract

claim.  However, the statutory provision at issue expressly applies to modifications or proposed

modifications to a franchise agreement, not to breaches of the agreement.  The parties have not

directed us to a published opinion on the statutory provision at issue, 63 P.S. § 818.12(b)(10), and

we have not found one.  However, a plain reading of the statute reveals that it proscribes a

"modification" or "proposed modification" to the agreement without 60-day written notice and

---

6.  Id. at pp. 5-6.

does not encompass breach of contract claims as alleged here. [7]

     "As a general rule, the best indication of legislative intent is the plain language of a statute." <u>Pennsylvania School Bds. Ass'n. v. Public School Employees Retirement Bd.</u>, 863 A.2d 432, 436 (Pa. 2004).  In this case, the plaintiff does not claim that the defendants proposed any type of modification to the franchise agreements; rather, it insists that the defendants' alleged breach of the franchise agreement is a "de facto" modification which implicates the PBVA.  It is clear, however, that to read the phrase "de facto" into the statute would be inappropriate, for "[i]t is not [a] Court's function to read a word or words into a statute that do not actually appear in the text where, as here, the text makes sense as it is, and the implied reading would change the existing meaning or effect of the actual statutory language." <u>Id.</u> at 439.

     Certainly, if the legislature intended breaches of franchise agreements to constitute a

---

7.   As set forth in 63 P.S. § 818.12(b)(10)(i), it is a violation of the PBVA to "Modify a franchise during the term of the franchise or upon its renewal if the modification substantially and adversely affects the new vehicle dealer's rights, obligations, investment or return on investment without giving 60 days' written notice of the proposed modification to the new vehicle dealer unless the modification is required by law, court order or the board. Within the 60-day notice period, the new vehicle dealer may file with the board and serve notice upon the manufacturer or distributor a protest requesting a determination of whether there is good cause for permitting the proposed modification. The board shall promptly schedule a hearing and decide the matter within 180 days from the date the protest is filed. Multiple protests pertaining to the same proposed modification shall be consolidated for hearing. The proposed modification shall not take effect pending the determination of the matter. In determining whether there is good cause for permitting a proposed modification, the board shall consider any relevant factors, including, but not limited to: (A) The reasons for the proposed modification. (B) Whether the proposed modification is applied to or affects all new vehicle dealers in a nondiscriminatory manner. (C) Whether the proposed modification will have a substantial and adverse effect upon the new vehicle dealer's investment or return on investment. (D) Whether the proposed modification is in the public interest. (E) Whether the proposed modification is necessary to the orderly and profitable distribution of products by the manufacturer or distributor. (F) Whether the proposed modification is offset by other modifications beneficial to the new vehicle dealer."

violation of 63 P.S. § 818.12(b)(10)(i), it would have so specified, as it does elsewhere in the statute.  Absent an allegation that DaimlerChrysler modified or proposed a modification to the franchise agreement without giving sufficient written notice, the PBVA claim in Count III fails.

As noted above, the plaintiff's claim in Count IV, wherein it sought "mandatory mediation pursuant to [the PBVA]", is moot.  See, fn. 3, supra.

In Count V, the plaintiff contends that DaimlerChrysler breached the franchise agreements and the Five Star Dealership Certification Program by, without limitation, "injuring [its] goodwill and reputation with customers", "arbitrarily discriminating against Plaintiff in favor of competing dealers in the provision of customer inquiries and sales leads" and "failing to make available to [it] assistance and services promised under the agreements and the Certification Program".  Amended Complaint at ¶ 93.  DaimlerChrsyler moves to dismiss the plaintiff's breach of contract claim on grounds it has not cited a specific contractual term which the defendants breached.  In turn, the plaintiff argues it is not required to specifically plead each contract term that the defendants breached.

The parties agree that pursuant to the franchise agreements, in the event of a dispute, their agreements will be construed under Michigan law.[8]  Under Michigan law, the elements of a breach of contract claim are: (1) the existence of a contract between the parties, (2) the terms of the contract, (3) a claim that defendants breached the contract, and (4) that the breach caused the plaintiff injury.  Webster v. Edward D. Jones & Co., 197 F.3d 815, 819 (6th Cir. 1999); Timmis v. Sulzer Intermedics, Inc., 157 F.Supp.2d 775, 777 (E.D.Mich. 2001).

Here, the amended complaint properly pleads a breach of contract claim.  As alleged

---

8.   See, ¶ 42 of the parties' Sales and Service Agreements.

in Count V, DaimlerChrysler and the plaintiff are parties to Direct Dealer, Sales and Services, E-Commerce, and other agreements which outline the parties' rights and obligations.  Amended Complaint at ¶ 89.  Attached to the amended complaint are copies of the aforesaid agreements (as Exhibits A and B).  The plaintiff complains that DaimlerChrysler breached the parties' agreements and the Five Star Dealership Certification Program in several ways, such as by misdirecting the plaintiff's potential customers to its competitors via the "Find A Dealer" website, failing to advertise in such a manner as to develop public interest in the plaintiff's business, and failing to provide it with the benefits of the Five Star Program.  Amended Complaint at ¶¶ 45, 51-60, 93.  The defendants' alleged breaches of contract have substantially harmed the plaintiff and caused it economic damage.  Id. at ¶ 94.  Based on these pleadings, the plaintiff has stated a viable claim for breach of contract.

In Count VI, the defendants are said to have breached the implied covenant of good faith and fair dealing, which the plaintiff claims is implied in the franchise agreements.  As noted above, the parties do not dispute that Michigan law controls their contract disputes.

Under Michigan law, courts recognize that an implied covenant of good faith and fair dealing arises "'where a party to a contract makes the manner of its performance a matter of its own discretion'".  New A.C. Chevrolet, 263 F.3d at 333, quoting Burkhardt v. City Nat'l. Bank of Detroit, 57 Mich.App. 649, 226 N.W.2d 678, 680 (1975).  As explained in Burkhardt: "Where a party to a contract makes the manner of its performance a matter of its own discretion, the law does not hesitate to imply the proviso that such discretion be exercised honestly and in good faith."  226 N.W.2d at 680.  Conversely, "'Michigan law does not imply the good faith covenant where parties have unmistakably expressed their respective rights'" under the contract.  New A.C. Chevrolet, 263

F.3d at 333-34, quoting Hubbard Chevrolet Co. v. General Motors Corp., 873 F.2d 873, 877 (5th Cir. 1989) (applying Michigan contract law).

Here, in conjunction with its breach of contract claim, the plaintiff asserts that DaimlerChrysler breached the covenants of good faith and fair dealing by misdirecting customer inquiries and sales leads from it, failing to give it website priority in or around its sales locality, and contravened DaimlerChryslers' promised advertising, marketing resources, and Five Star rewards Program, all of which were within the defendants' own discretion.[9]  These allegations are sufficient to withstand the defendants' motion to dismiss, because "situations in which one party retains unfettered control over part of its performance under a contract... call most strongly for the application of an implied covenant of good faith." A.C. Chevrolet, 263 F.3d at 334-35 (construing Michigan law).

In Count VII, the plaintiff purports to state a claim for tortious interference with prospective contractual relations.  This claim cannot lie.

Pennsylvania recognizes the tort of intentional interference with prospective contractual relations.  U.S. Healthcare v. Blue Cross of Greater Philadelphia, 898 F.2d 914, 925 (3d Cir. 1990).  To state such a claim, a plaintiff must allege (1) a prospective contractual relationship; (2) a purpose or intent to harm the plaintiff by preventing the relationship from occurring; (3) the absence of privilege or justification on the part of the defendant; and (4) the occurrence of actual damage.  Silver v. Mendel, 894 F.2d 598, 602 (3d Cir. 1990), cert. denied, 110 S.Ct. 2620 (1990).

The first element of this tort, "a prospective contractual relationship", has been

---

9.   See, plaintiff's brief opposing the motion to dismiss at pp. 7-8.  Also see, amended complaint at ¶¶ 45, 51-53 and 57.

defined as "something less than a contractual right, something more than a mere hope." <u>Alvord-Polk, Inc. v. F. Schumacher & Co.</u>, 37 F.3d 996, 1015 (3d Cir. 1994), <u>cert. denied</u>, 115 S.Ct. 1691 (1995), quoting <u>Thompson Coal Co. v. Pike Coal Co.</u>, 412 A.2d 466 (Pa. 1979). It is "a reasonable probability" that contractual relations will be realized. <u>Id</u>. To state a cognizable claim, a complaint must allege that a particular contract or express offer was being contemplated by a plaintiff and/or third party which was improperly impeded by the defendant's action. <u>Silver</u>, <u>supra</u>, 894 F.2d at 602; accord, <u>Glenn v. Point Park College</u>, 272 A.2d 895, 897-899 (Pa. 1971). That is, a "plaintiff's pleadings must identify specific business relationships suffering as a result of the defendant's interference." <u>Applied Technology, Intern., LTD. v. Goldstein</u>, 2004 WL 2360388, *6 (E.D.Pa., Oct. 20, 2004), citing, <u>Brunson Communications, Inc. v. Arbitron, Inc.</u>, 239 F.Supp.2d 550, 578 (E.D.Pa. 2002) (where the Court granted a motion to dismiss for failure to state a claim where plaintiff failed to identify "a single past, present or prospective customer... with whom it had a prospective contract which did not finalize because of defendant's actions").

Here, the plaintiff fails to plead that any prospective agreement was being contemplated between itself and a third party which the defendants impeded. Rather, the plaintiff proffers no more than speculation to support its claim, which is insufficient to state a viable claim. See, <u>Alvord-Polk</u>, <u>supra</u>, 37 F.3d at 1015 (a prospective contract "exists if there is a reasonable probability that a contract will arise from the parties' current dealings." If a party "fail[s] to identify with sufficient precision contracts and prospective contracts which were interfered with", or "fail[s] to advance more than speculation to support their claim", the claim must fail); <u>Gilmore v. Bohmueller</u>, 2005 WL 241181, *14 (E.D.Pa., Jan. 27, 2005) ("Conclusory speculation that plaintiffs might have entered into a business or contractual relationship with unspecified third

13

parties is insufficient to state a claim for tortious interference"), citing <u>Alvord Polk</u>, 37 F.3d at

1015; <u>Advanced Power Systems, Inc. v. Hi-Tech Systems, Inc.</u>, 1992 WL 97826, *11 (E.D.Pa.,

April 30, 1992) ("at the pleading stage, a plaintiff may not rest a claim for tortious interference

with prospective contractual relations on a mere hope that additional contracts or customers would

have been forthcoming but for defendant's interference"), citing <u>Glenn</u>, <u>supra</u>, 272 A.2d at 898-99.

Based on the foregoing, the plaintiff fails to state a viable claim in Count VII.

   In Count VIII, the defendants are said to be liable for negligence which caused the

plaintiff economic harm by engaging in advertising campaigns directed at plaintiff's customers.

The defendants have moved to dismiss this claim on grounds it is barred by the economic loss

doctrine and the gist of the action doctrine.

   We agree that Count VIII is barred by the gist of the action doctrine.  Under

Pennsylvania law, "courts are cautious about permitting tort recovery based on contractual

breaches." <u>Pittsburgh Construction Co. v. Griffith</u>, 834 A.2d 572, 581 (Pa.Super. 2003), citing

<u>Glazer v. Chandler</u>, 200 A.2d 416, 418 (Pa. 1964).  Thus, courts utilize the "gist of the action"

doctrine, which "is designed to maintain the conceptual distinction between breach of contract

claims and tort claims [by] preclud[ing] plaintiffs from recasting ordinary breach of contract claims

into tort claims." <u>eToll, Inc. v. Elias/Savion Advertising, Inc.</u>,  811 A.2d 10, 14 (Pa.Super. 2002).

   Pennsylvania courts utilize the "gist of the action" test "to determine whether tort

claims that accompany contract claims should be allowed as freestanding causes of action or

rejected as illegitimate attempts to procure additional damages for a breach of contract".  <u>Bohler-

Uddeholm America, Inc. v. Ellwood Group</u>, 247 F.3d 79, 103 (3d Cir. 2001), <u>cert</u>. <u>denied</u>, 534 U.S.

1162 (2002).  In <u>Bohler-Uddeholm</u>, <u>supra</u>, the Third Circuit Court of Appeals discussed the "gist of

14

the action" test as follows:

> to be construed as a tort action, the [tortious] wrong
> ascribed to the defendant must be the gist of the action
> with the contract being collateral.... [T]he important
> difference between contract and tort actions is that the
> latter lie from the breach of duties imposed as a matter
> of social policy while the former lie for the breach of
> duties imposed by mutual consensus.

Id., quoting Redevelopment Auth. of Cambria County v. International Ins. Co., 685 A.2d 581,

590 (Pa.Super. 1996), cert. denied, 695 A.2d 787 (Pa. 1997).  Where alleged tortious conduct

arises from the same facts supporting a breach of contract claim, the tort claim cannot lie unless it

is the "gist of the action", with the contract being collateral.  USX Corp. v. Prime Leasing Inc., 988

F.2d 433, 440 (3d Cir. 1993).

 Here, the negligence claim in Count VIII is barred by the "gist of the action"

doctrine, as it arises from the same facts which support the plaintiff's breach of contract claim.  For

instance, in its breach of contract claim, the plaintiff complains that the defendants violated the

parties' agreements by, among other things, discriminating against it in favor of competing dealers

by misdirecting the plaintiff's potential customers to its competitors and failing to advertise in a

manner that would develop public interest in the plaintiff's business.  Similarly in Count VIII, the

plaintiff complains that the defendants engaged in advertising campaigns directed at plaintiffs'

customers which it knew would divert business to plaintiff's competitors and harm its business.

Amended Complaint at ¶¶ 111-112.  Since the negligence claim arises from the defendants' alleged

breach of contractual obligations, the gist of Count VIII is breach of contract.

 Having found that the plaintiff has stated viable causes of action in Counts V and

VI, its claim for a declaratory judgment in Count I should not be dismissed.  Therefore, it is

recommended that the defendants' motion to dismiss the amended complaint (Document No. 34) be granted as to Counts II, III, IV, VII and VIII and denied in all other respects.

Within thirteen (13) days after being served with a copy, any party may serve and file written objections to this Report and Recommendation.  Any party opposing the objections shall have seven (7) days from the date of service of objections to respond thereto.  Failure to file timely objections may constitute a waiver of any appellate rights.

Respectfully submitted,

s/ ROBERT C. MITCHELL
United States Magistrate Judge

Dated: October 17, 2007

16